A. D. PIERNAS v. F. MILLIET, Syndic, &c.

A court will not arrest the execution of legal process for matters dehors the record, without bond and affidavit of the party asking relief

But where the process of the court appears on the face of it to have been wrongfully issued, the court will at the mere suggestion of the party liable to be injured, arrest such process; and in such case it is not irregular to order a provisional stay of execution pending a rule to quash.

The pendency of an action to annul a supposed judgment, is no bar to a rule to quash a fi. fa. which issued thereon.

APPEAL from the Third District Court of New Orleans. *Kennedy*, J.
*J. & E. Bermudez*, for appellant. *F. Buisson* and *C. Redmond*, for appellee.

BUCHANAN, J. This is an appeal taken from a judgment dismissing a rule to quash an execution issued by the clerk at the instance of a syndic of an insolvent estate against a mortgagee, creditor of the estate for a contribution to pay privileged debts. The whole proceeding on the part of the syndic is of the most extraordinary kind. The record shows that *Thomas Duplessis* sued his creditors in the parish court of New Orleans in the year 1838 and surrendered a large amount of real estate, upon which there was a sum exceeding its market value, due to *Duplessis'* vendors. The property was sold by the syndic and adjudicated to the mortgagees. Two tableaux were filed by *Valerein Allain* and *Joseph Lecarpentier*, syndics; the first in 1840 and the second in 1842. The tableau filed by the syndic *Lecarpentier* on the 7th March, 1842, showed an amount of $47,401 17 sales at auction of mortgaged property, all adjudicated, as above said, to the mortgagees. The privileged debts amounted, according to the same tableau, to $7429 76, of which $3041 46 were defrayed by cash in hand, leaving a balance unsatisfied of $4388 30; to satisfy which, the tableau levied a contribution of 9¼ per cent upon the mortgagee creditors who had purchased at syndic's sale, but who had paid nothing on their bids. Subsequently to that tableau, to wit: on the 31st July, 1843, *Hewlett & Cenas*, auctioneers, sold at auction by order of the syndic *Lecarpentier*, certain other property purchased by the insolvent from one *Piernas*; and at this sale *Piernas* became the purchaser for the nominal price of $610, nothing being paid, inasmuch as *Piernas* had a mortgage and privilege of vendor. Many years having elapsed, and the syndic, *Lecarpentier*, being dead, a meeting of creditors, convened for the purpose, appointed one *Felix Milliet* syndic, one of the first acts of whose administration was to obtain from *Piernas* an obligation (dated the 31st May, 1851,) in which it is set forth that "in consideration of a confirmatory act of sale of the present date, wherein *Felix Milliet* of this city in his capacity of syndic of the creditors of *Thomas Duplessis* confirms a sale of property made to me (*Piernas*) at public auction by *Hewlett & Cenas*, auctioneers, on the 31st July, 1843, I, the undersigned, *Albert D. Piernas*, also of this city, do hereby obligate and acknowledge myself bound to the said *Felix Milliet*, syndic as aforesaid, to pay my share in the privileged costs in the failure of said *Duplessis* as they are now or may hereafter be determined by the proper courts of this city and parish."

On the 12th May, 1852, the syndic *Milliet* having drawn from the Louisiana State Bank a sum of $99 28, balance deposited to the credit of the late syndic, *Joseph Lecarpentier*, filed a tableau of distribution, in which he placed on the credit side the said balance of $99 28, also the price of adjudication to *Piernas*

at *Hewlett & Cenas'* sale, $610, and on the debit side charged privileged debts, principally taken from the old tableau of *Lecarpantier*, making an aggregate which exceeded by $711 42 the amount of cash ($99 28) in the syndic's hands, and at the bottom of the tableau is a memorandum charging *Piernas* with the whole of that balance, as a contribution upon his bid, although exceeding by $100 the whole amount of his bid.

This tableau was advertised and in due time homologated; and in July, 1853, a *fieri facias* was issued from the court where the proceedings were pending, commanding the sheriff to demand of *Albert L. Piernas* the sum of $711 42 "for the balance which he has to pay agreeably to the terms of his obligation filed on the 12th May, 1852, and homologated so far as not opposed on the 26th May, 1852, and also one dollar and ten cents of this writ, which *Felix Milliet*, as syndic of the creditors in this case, lately recovered by judgment of the said court, and if he shall not pay the same after legal demand, that then you shall cause the same to be made, &c."

This writ of *fieri facias* was returned 18th November, 1853, " stayed by order of plaintiff." On the 25th November, 1854, an alias *fieri facias* of the same tenor was issued; and on the 16th December, 1854, the district court granted, on motion of *Piernas*, a rule upon the syndic to show cause why the alias *fieri facias* should not be quashed and annulled as having been "issued illegally and without right." In granting this rule *nisi*, the court ordered a provisional suspension of the execution of the writ. To this rule the syndic filed exceptions, the third of which is as follows: " That plaintiff in rule is also plaintiff in a suit No. 6740 of the docket wherein on various grounds he prays that the judgment for the enforcement of which the fi. fa. is arrested by said rule be avoided and annulled. That this rule anticipates the trial of said suit and a favorable judgment for plaintiff." After hearing, the court sustained this exception and dismissed the rule; from which judgment a suspensive appeal has been granted by the district court, notwithstanding an effort on the part of the syndic to make the appeal devolutive; that court being of opinion " that the real justice of the case entitles the defendant in execution to protection.

In this court the appellee has relied altogether upon the technical ground that the *fieri facias* could not be stayed except by process of injunction.

As a general rule, and where the relief of a supercedeas is asked upon matters which do not appear upon the face of the proceedings, a court will not make an order to arrest the execution of process issued by the clerk, without an affidavit, and a bond given to secure the party who is interested in having the process executed, from the damages which he will probably suffer by the order, if wrongfully obtained. But when the process of the court appears on the face of it, to have been wrongfully issued, as for instance when a *fieri facias* has been issued by the clerk without a judgment to support it, the court has an undoubted right to interfere, and on the suggestion of the party injured, or even *exproprio motu* to arrest such unlawful proceedings. All judges possess the powers necessary for the exercise of their respective jurisdiction, although the same be not expressly given by law. C. P. Art. 130. The district judge evidently viewed the case in the light here presented. See his remarks in overruling exceptions to the action of nullity. Also his reasons for dismissing the syndic's rule to set aside the suspensive appeal. Again, what damages can the syndic suffer by the provisional stay of the execution ? He is the representative of all the creditors alike. In this case he has no interest of his own, for

he is not a creditor, and never was a creditor of this estate, but has been appointed without giving security, and for what purpose does not very clearly appear, unless it be to enforce a certain judgment against *Blossman* and *Duplessis*, which seems to be the only asset remaining to this estate, all the rest having been exhausted many years before his appointment. We have only to enquire then, whether the pendency of the suit for what is called nullity of judgment, was any bar to the stay of proceedings ordered by the district court on the 16th December, 1854. We are of opinion that it was not. On the 5th of the same month, the district Judge had expressed himself as follows, in deciding upon exceptions to the action of nullity.

" I incline to the opinion that the memorandum at the foot of the tableau homologated in 1852 is in no sense a judgment against the plaintiff, and that there is therefore nothing to annul in which he has an interest. If such be the case, he might nevertheless under the prayer for general relief, have it declared by the court that it is not a judgment, and that no execution could legally issue under it."

Such being the impression of the learned judge, there was nothing inconsistent with the pendency of the action of nullity, in the rule nisi which he granted a few days afterwards to quash the *fieri facias* and the provisional order to stay proceedings pending the decision of the rule.

It is therefore adjudged and decreed, that the judgment appealed from be reversed, that the rule of appellant of the 16th December, 1854, be made absolute, and the *fieri facias* mentioned in said rule be quashed and annulled ;· the syndic, *Felix Milliet*, to pay costs in both cases.